UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>DELACEY ANDRADE, KENDRICK )<br>JOHNSON, KEISHON JOHNSON, )<br>and MONTREL JOHNSON, )<br>    Defendants. )<br>) | C.A. No. 18-145-JJM-LDA |

## ORDER

Defendant Kendrick Johnson moves to suppress evidence obtained from the seizure and search of cell phones. ECF No. 96. The government objects, asserting that the police conducted the searches following validly issued search warrants. ECF No. 146.[1]

### I. FACTS

Kendrick Johnson was driving a rental car with a passenger in the front seat when a Pawtucket police officer pulled them over because the car's windows were heavily tinted. Mr. Johnson does not challenge the legality of the traffic stop. The officer reported that, as he approached the car, he saw money on Mr. Johnson's lap. He also saw the passenger hunched over as if he were trying to conceal something in

---

[1] "A criminal defendant has no presumptive right to an evidentiary hearing on a motion to suppress." *United States v. Cintron*, 724 F.3d 32, 36 (1st Cir. 2013) (citing *United States v. D'Andrea*, 648 F.3d 1, 5 (1st Cir. 2011)). Mr. Johnson has not made a showing that there are "material facts *** in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." *United States v. Staula*, 80 F.3d 596, 603 (1st Cir. 1996)). He also failed to "show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief." *Id.*

his waistband. The officer began questioning Mr. Johnson and learned that he had a suspended driver's license and was on probation for gun and drug charges. The questioning continued, leading Mr. Johnson to produce some marijuana as well as a medical marijuana card.

Mr. Johnson exited the vehicle, and the officer conducted a "*Terry* pat" during which he felt a hard object in Mr. Johnson's right pocket that turned out to be an illegal folding knife. *See Terry v. Ohio*, 392 U.S. 1 (1968). The officer seized the knife and arrested Mr. Johnson for possession of a knife with a blade more than three inches. Consistent with Pawtucket Police Department policy, the police conducted an inventory search of the car. The officer seized four cell phones.[2]

The next day, Mr. Johnson pleaded *nolo contendre* to the knife charge, was sentenced to thirty days imprisonment, and remanded him to the Adult Correctional Institutions ("ACI"). Pawtucket Police returned the cell phones to Mr. Johnson. They did not search any content including digital data.

Later that day, a Providence Police detective applied for a search warrant to seize the four cell phones. A state court judge issued the warrant, and the police retrieved the phones from Mr. Johnson. Police then sought a warrant to do a forensic search of the phones; a few days later, a state court judge issued that search warrant permitting the police to search the phones' content. Mr. Johnson moves to suppress the results of this search.

---

[2] The police inventory sheet says that they seized four "cellphones," but under cell phones, there is a reference to an iPad. ECF No. 166-1 at 2. Because they are all listed as cellphones on the inventory sheet, the Court will refer to them in that way.

## II. ANALYSIS

Mr. Johnson's motion focuses on the inventory search where Pawtucket Police first took his phones without a warrant or probable cause and the adequacy of the affidavits supporting the warrants. The Court will address each claim in turn.

### A. Initial Seizure Based on Car Inventory Search

Mr. Johnson rightly concedes that the inventory search was permissible,[3] but contends that the cell phones should not have been seized because the police did not have probable cause to believe that the phones would contain any evidence relating to the crime with which he was charged, possession of an illegal knife. ECF No. 96-1 at 11. However, "[t]he Fourth Amendment permits a warrantless inventory search if the search is carried out pursuant to a standardized policy." *United States v. Richardson*, 515 F.3d 74, 85 (1st Cir. 2008). Both Mr. Johnson and his passenger had suspended driver's licenses, so Pawtucket Police General Order on Inventory of Motor Vehicles required that they tow the rental car and do an inventory of its contents. ECF No 146-2. The police returned the phones to Mr. Johnson at the ACI without searching them. This police action was appropriate under the circumstances, pursuant to departmental policy and therefore did not violate Mr. Johnson's constitutional rights.

---

[3] "The officer may have been lawfully permitted to conduct the inventory of the items in the vehicle . . ." ECF No. 96-1 at 11.

3

## B. Sufficiency of Search Warrant Affidavits

Mr. Johnson's next argument stems from Providence Police Department's ("PPD") involvement with the phones initially seized. PPD believed the phones contained evidence about two shootings that took place a month earlier on October 22, 2016. PPD sought a search warrant in state court to get the cell phones back from Mr. Johnson and a second warrant to analyze the data on the phones once they had them.[4] Mr. Johnson alleges that the affidavit in support of the application was insufficient and contained misrepresentations. Specifically, while Mr. Johnson concedes that the "[a]ffidavit may establish probable cause that the defendant's vehicle, the Nissan Maxima, was involved in the shooting," (ECF No. 96-1 at 14), he contends that the "[a]ffidavit makes no attempt to link [the] phone number [used during the shootings] with any of the phones seized from the defendant." *Id.*

Turning to the affidavit, the Court must "review the sufficiency of an affidavit supporting a search warrant," but "afford an ample amount of deference to the issuing magistrate's finding of probable cause." *United States v. Dixon*, 787 F.3d 55, 58–59 (1st Cir. 2015). A court should reverse "the magistrate judge's initial evaluation ... only if we see no substantial basis for concluding that probable cause existed." *United States v. Ribeiro*, 397 F.3d 43, 48 (1st Cir. 2005) (internal quotation marks omitted). "[T]he facts presented to the magistrate need only 'warrant a [person] of reasonable

---

[4] Because the affidavits given were nearly identical in all relevant purposes, the Court will analyze the sufficiency of the affidavits for issuing both search warrants. The second warrant affidavit specifically identifies the phones and provides particular details about where on the electronic devices evidence related to the shootings would be found.

4

caution' to believe that evidence of a crime will be found." *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion)). "Probable cause does not require either certainty or an unusually high degree of assurance." *United States v. Clark*, 685 F.3d 72, 76 (1st Cir. 2012). Rather, "[p]robability is the touchstone." *United States v. Khounsavanh*, 113 F.3d 279, 283 (1st Cir. 1997) (quoting *United States v. Aguirre*, 839 F.2d 854, 857 (1st Cir. 1988)) (internal quotation marks omitted). "[C]ourts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *United States v. Ventrasca*, 380 U.S. 102, 109 (1965)).

Two shootings took place in Providence on the night of October 22, 2016: one near Silver Spring Avenue and the other thirteen minutes later near the corner of Corina and Appian Streets. The Court finds that the affidavit[5] demonstrates that there was probable cause that Mr. Johnson was involved in both and that the phones could have evidence related to the shootings.

- Video showed that Montrell Johnson (a co-defendant and Mr. Johnson's brother) entered a Walmart shortly before the first shooting. Inside, he saw a member of a gang – the so-called "East Side gang" – that is the rival of the so-

---

[5] Where the magistrate judge's probable cause finding was based on information provided by an unnamed informant, "the affidavit must provide some information from which the magistrate can assess the informant's credibility." *United States v. Greenburg*, 410 F.3d 63, 67 (1st Cir. 2005). In this case, the affidavit was based on confidential PPD sources known for giving reliable information as well as the officers' professional experience in law enforcement and specifically in Providence gang activity.

called "Chad Brown gang" that the Johnson brothers are alleged to lead. This person would become a victim of the first shooting. Montel Johnson then ran from the store and placed a call to a phone number known to be used by Mr. Johnson. Geolocation data placed that phone within two miles of the area of the shooting at the time.

- Soon after, a Nissan Maxima with the license plate IP540, registered to Mr. Johnson, is seen following the victim's car. Shots are fired from the Maxima toward the victim's car.

- About thirteen minutes later, a person in the Nissan Maxima is seen shooting at the second victim's car a short distance away. Shell casings from this shooting match the shell casing from the first shooting. The second victim described the shooters in a way that resembled Mr. Johnson and his brother.

These facts[6] link Mr. Johnson and his cell phones with how the two shootings transpired so the state court judge was justified in finding probable cause to issue the first search warrant to seize Mr. Johnson's phones and the second search warrant for the content of the phones because the affidavit contained facts that evidence of the crime was likely to be found on any electronic mobile devices that Mr. Johnson

---

[6] Added supportive facts in the affidavit included evidence of possible motive. The victim posted trial testimony on his Facebook page that Mr. Johnson gave in a prosecution for murder, and the victim termed Mr. Johnson a "snitch." Mr. Johnson later recorded a video in which he said he was going to "Beat the brakes off [the victim]." ECF No. 146-3 at 8.

possessed.[7] The affidavit was sufficient to issue the warrants and evidence forthcoming from the searches should be not be suppressed.

### C. Removal of the Backs of the Cell Phones

Police removed the back covers of the cell phones during the seizure to find the serial numbers and apply for another search warrant. Mr. Johnson challenges the removals as an illegal warrantless search. His challenge fails because law enforcement already legally had the devices following the inventory search and the law does not require a warrant when "police did not search digital content within the phone, but rather checked the phone for its serial number, written in a space behind the battery pack." *Ward v. Lee*, No. 19-cv-03986 (KAM), 2020 WL 6784195, at *8 (E.D.N.Y. Nov. 18, 2020), appeal filed (2d Cir. Jan. 5, 2021) (No. 21-7); *see also, e.g., United States v. Pacheco*, No. 11-CR-121-A, 2015 WL 3402832, at *6 (W.D.N.Y. May 27, 2015) (law enforcement can legally enter phone without a search warrant to view identification numbers so long as purpose is not to search for digital data).

### III. CONCLUSION

The Court DENIES Kendrick Johnson's Motion to Suppress. ECF No. 96.

---

[7] "[W]here agents could not have known which device a defendant used to engage in the conduct relevant to the search, courts have upheld warrants broadly authorizing the seizure of '[a]ny computers, cell phones, and/or electronic media that could been used as a means to commit' described offenses." *United States v. Smith*, Case No. 19-cr-324 (BAH), 2021 WL 2982144, at *7 (D.D.C. July 15, 2021) (quoting *United States v. Loera*, 59 F. Supp. 3d 1089, 1151-52 (D.N.M. 2014)).

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

January 20, 2022